BRAY v DEPARTMENT OF STATE

Docket No. 43329. Submitted January 2, 1980, at Detroit.—Decided
April 22, 1980. Leave to appeal applied for.

Willie Bray and others filed a class action against the State of
Michigan, its governor and other departments seeking a refund
of one-half of the 1973 fee paid by plaintiffs to the Motor
Vehicle Accident Claims Fund (MVACF) under the Motor
Vehicle Accident Claims Act (MVACA). Prior to 1973, a fee of
$45 entitled an uninsured motorist to drive his uninsured
vehicle until April 1 of the following year. The no-fault act was
passed, which allowed driving under MVACA only until Octo-
ber 1, 1973. Plaintiffs alleged both constitutional and nonconsti-
tutional grounds for recovery. Wayne Circuit Court refused to
consider the constitutional claims since, in its opinion, the case
could be decided according to state law. The court determined
that the fee represented a license and that plaintiffs were
entitled to a 50% refund. The Court of Appeals affirmed the
lower court but held that the fee was in the nature of an
insurance premium rather than a license. *Bray v Dep't of
State,* 69 Mich App 172; 244 NW2d 619 (1976). The Court also
ruled that individuals harmed by uninsured motorists had
priority in payment from MVACF. The case was remanded to
the trial court to determine whether the fund's reserve was
sufficient to satisfy both types of claimants. On remand, the
trial court, Horace W. Gilmore, J., entered an amended order
which permitted plaintiffs to renew their constitutional claims.
The court then decided the constitutional issues against defen-
dants and an immediate refund was ordered. Defendants ap-
peal. On appeal defendants contend the circuit court was
without power to decide the constitutional issues, that the
immediate refund order is inconsistent with the holding of the

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 962.
[2] 46 Am Jur 2d, Judgments §§ 477, 478.
[3] 16 Am Jur 2d, Constitutional Law § 172.
[4] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 50, 53, 93.
[5] 16A Am Jur 2d, Constitutional Law §§ 580, 584-586.
[6] 16A Am Jur 2d, Constitutional Law § 598.

Court of Appeals that plaintiffs' claims were subordinate and that, although plaintiffs' constitutional claims were not considered by either court, res judicata acts as a bar to such consideration. *Held:*

1. A lower court, on remand, may take such action as law and justice require so long as it is not inconsistent with the judgment of the appellate court. Defendants' contention that the trial court's order mandating an immediate refund is inconsistent with the remand order that plaintiffs' claims be subordinate is an argument which ignores the fact that the remedy provided by the Court of Appeals was based on a different cause of action.

2. The constitutional claims which formed the basis of the action were not litigated because there existed an independent state law ground for the holding. This is in conformity with the rule that a court will not pass upon a constitutional question if there is some other ground upon which the case may be decided. The action was not barred by res judicata.

3. Plaintiffs' constitutional rights were violated. All Michigan motorists have a significant property interest in being able to register and operate a motor vehicle. Insurance policies are valid contracts and therefore are subject to Fifth Amendment guarantees which command that property not be taken without making just compensation. This includes partial destruction or diminution in value. When the no-fault act became effective October 1, 1973, plaintiffs' contract of insurance with the state was terminated. The contract rights taken by the state are represented by the premium for the unexpired portion of the contract which was determined to be $22.50. That money was previously placed in the MVACF and used to recompense members of the public injured by uninsured motorists. Plaintiffs are entitled to a refund whether or not the MVACF is solvent. Otherwise, plaintiffs would be left with a constitutionally compelled remedy with no means of satisfaction.

Affirmed.

1. COURTS — REMAND — CAUSE OF ACTION — REMEDIES — INCONSISTENT CAUSES AND REMEDIES.

A lower court, on remand, may take such action as law and justice require so long as it is not inconsistent with the judgment of the remanding court; it is the cause of action and not the remedy which must not be inconsistent and a remedy provided by the lower court, after remand, will stand where the remedy supplied by the Court of Appeals in its remand was based on a different cause of action.

2. JUDGMENT — RES JUDICATA — MERITS — ISSUES — PRIVIES — REASONABLE DILIGENCE.

A judgment, to constitute a bar to a claim in a subsequent action, must be rendered upon the merits, upon the same matter in issue and between the same parties or their privies; a plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.

3. COURTS — CONSTITUTIONAL LAW — CONSTITUTIONAL QUESTIONS — OTHER GROUNDS.

A court will not pass upon a constitutional question, even though properly presented, if there is also present some other ground upon which the case may be disposed of.

4. AUTOMOBILES — MOTORISTS — REGISTER AND OPERATE — PROPERTY INTEREST.

All Michigan motorists have a significant property interest in being able to register and operate a motor vehicle.

5. CONTRACTS — INSURANCE POLICIES — CONSTITUTIONAL LAW — FIFTH AMENDMENT.

Valid contracts are property; insurance policies are contractual in nature and therefore come within the constitutional guarantees of the Fifth Amendment which commands that property not be taken without making just compensation; even a partial destruction or diminution in the value of a contract is a taking which requires compensation.

6. CONSTITUTIONAL LAW — JUDGMENTS — REMEDIES — DISBURSEMENT BEFORE JUDGMENT.

Disbursement of specific funds by the state before judgment is not a sufficient justification to deny a constitutionally compelled remedy.

*Harry S. Ellman,* and *Barris, Sott, Denn & Driker* (by *Donald E. Barris, Sharon M. Woods* and *Barbara Shaw Harvey),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bil-*

*itzke, Warren R. Snyder* and *William B. Wreford,* Assistants Attorney General, for defendants.

Before: T. M. BURNS, P.J., and BASHARA and N. J. KAUFMAN, JJ.

BASHARA, J. This case makes its second appearance before our Court. Plaintiffs initiated the present class action to obtain a refund of one-half of the 1973 fee paid pursuant to the Motor Vehicle Accident Claims Act, MCL 257.1101 *et seq.;* MSA 9.2801 *et seq.* (hereinafter referred to as MVACA). Payment of the fee entitled plaintiffs, who were uninsured motorists, to drive for a twelve-month period ending April 1, 1974. However, as of October 1, 1973, all Michigan motorists were required to purchase no-fault automobile insurance. MCL 500.3101; MSA 24.13101. Plaintiffs claim that the no-fault act vitiated their rights under the MVACA.

Plaintiffs alleged both constitutional and non-constitutional grounds for recovery. The trial court refused to consider the constitutional claims since, in its opinion, the case could be decided according to state law. The circuit court determined that the fee represented a license and that plaintiffs were entitled to a 50% refund. The court ordered an amount equal to the refund placed in escrow pending final resolution of the case.

This Court affirmed the lower court, but held that the fee was in the nature of an insurance premium rather than a license. *Bray v Dep't of State,* 69 Mich App 172; 244 NW2d 619 (1976), *lv den* 397 Mich 851 (1976). The Court further ruled that the class of individuals harmed by uninsured vehicles had priority in receiving payment from the Motor Vehicle Accident Claims Fund, MCL 257.1103; MSA 9.2803 (hereinafter referred to as

MVACF). The partial fee refunds to which plaintiffs were entitled were subordinated to the claims of that class.

The Court noted that at the time of the decision, the three-year statute of limitations of the MVACA (MCL 257.1118; MSA 9.2818) had not yet run. As such, the Court was unable to determine whether the fund's reserve was sufficient to satisfy the claims of both the plaintiffs and persons harmed by uninsured motorists. Accordingly, the case was "remanded for further proceedings not inconsistent with this opinion". *Bray, supra,* 182.

On July 22, 1977, the circuit court entered an amended final order in compliance with this Court's opinion. The lower court further ordered that plaintiffs would be permitted to renew their constitutional claims, since they had not previously been considered. The constitutional issues were decided against defendants and an immediate refund ordered. The refund was to be paid from the state's general fund without regard to the solvency of the MVACF. Defendants appeal from this decision.

Defendants first argue that the circuit court was without power to decide the constitutional issues. It is claimed that the lower court disregarded the law of the case and violated the doctrine of res judicata.

A lower court on remand may "take such action as law and justice require so long as it is not inconsistent with the judgment of the appellate court". *Sokel v Nickoli,* 356 Mich 460, 464; 97 NW2d 1 (1959), *Meyering v Russell,* 85 Mich App 547, 552; 272 NW2d 131 (1978).

Defendants contend that the trial court's order mandating an immediate refund is inconsistent

with this Court's holding that the plaintiffs be subordinated to other claimants of the MVACF. This argument ignores the fact that the remedy provided by the Court of Appeals was based on a different cause of action. It is the cause of action and not the remedy which must not be inconsistent.

Plaintiffs' constitutional claims were expressly not considered by the trial court nor by this Court on appeal.

Defendants nevertheless maintain that res judicata acts as a bar to such consideration.

The doctrine of res judicata is defined in *Curry v Detroit,* 394 Mich 327, 332; 231 NW2d 57 (1975), quoting *Tucker v Rohrback,* 13 Mich 73 (1864), as follows:

"A judgment, to constitute a bar to a claim in a subsequent action, must be rendered upon the merits, upon the same matter in issue and between the same parties or their privies."

In determining the issue of whether a matter must have been actually litigated, the *Curry* Court, quoting *Gursten v Kenney,* 375 Mich 330; 134 NW2d 764 (1965), stated:

"The plea of *res judicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

We find that the present action is not barred by res judicata. The constitutional claims which

formed the basis of the present action were not litigated because there existed an independent state law ground for the holding. This is in conformity with the rule that a "court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of". *Ashwander v Tennessee Valley Authority,* 297 US 288, 347; 56 S Ct 466; 80 L Ed 688 (1936) (Brandeis, J., concurring).

Having determined that the constitutional issues were properly before the court, we must next decide whether any of plaintiffs' constitutional rights were violated.

Plaintiffs contend that the right to register and drive their vehicles between October 1, 1973, and April 1, 1974, was a property interest entitled to protection under both the "Due Process" and "Taking" clauses of the Fifth Amendment to the Constitution. US Const, Am V, Am XIV.

Specifically plaintiffs argue that the termination of their rights under the MVACA was a deprivation of property without due process of law, and a taking for public use without just compensation. US Const, Am V, Am XIV.

In reviewing the no-fault act, our Supreme Court recently recognized that all motorists have a significant property interest in being able to register and operate a motor vehicle. *Shavers v Attorney General,* 402 Mich 554, 598; 267 NW2d 72 (1978):

"In Michigan the independent mobility provided by an automobile is a crucial, practical necessity; it is undeniable that whether or not a person can obtain a driver's license or register and operate his motor vehicle profoundly affects important aspects of his day-to-day life."

Moreover, we are bound by our previous conclusions in *Bray v Dep't of State, supra,* insofar as they affect our analysis of the issues then under consideration. *Taines v Munson,* 42 Mich App 256, 259; 201 NW2d 685 (1972). In *Bray,* this Court after concluding that the $45 fee was neither a license fee nor tax said:

"The $45 fee thus could be said to represent an annual insurance premium paid by those who have not acquired private insurance policies." *Bray, supra,* 178.

An insurance policy is contractual in nature and contracts are certainly within the purview of the Fifth Amendment. *Lynch v United States,* 292 US 571; 54 S Ct 840; 78 L Ed 1434 (1934), *Houston & Texas Central R Co v Texas,* 170 US 243; 18 S Ct 610; 42 L Ed 1023 (1898).

The *Lynch* Court's analysis of the problem, applied to the Federal government, is closely akin to the issue presented in the present case:

"The Fifth Amendment commands that property be not taken without making just compensation. Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment. *United States v Central Pacific R. Co.,* 118 U.S. 235, 238, *United States v Northern Pacific Ry. Co.,* 256 U.S. 51, 64, 67. When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals. That the contracts of war risk insurance were valid when made is not questioned. As Congress had the power to authorize the Bureau of War Risk Insurance to issue them, the due process clause prohibits the United States from annulling them, unless, indeed, the action taken falls within the federal

police power or some other paramount power." 292 US 571, 579. (Footnotes omitted.)

Similarly, Justice ADAMS, speaking for a unanimous Michigan Supreme Court in *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630, 642; 178 NW2d 476 (1970), quoted with approval from *Pearsall v Board of Supervisors of Eaton County,* 74 Mich 558, 561, 562; 42 NW2d 77 (1889):

" ' "A partial destruction or diminution in value is a taking." Mills, Em. Dom. § 30; *Pumpelly v. Green Bay Company* (1871), 80 US (13 Wall) 166, 177 (20 L Ed 557); *Cushman v. Smith* (1852), 34 Me 247; *Grand Rapids Booming Company v. Jarvis* (1874), 30 Mich 308.
" 'If the public take any action which becomes necessary to subserve public use, and valuable rights of an individual are thereby interfered with, and damaged or destroyed, he is entitled to the compensation which the constitution gives therefor, and such damage or destruction must be regarded as a "taking." ' "

Justice ADAMS went on to state for the *Buckeye* Court:

"This Court has applied the constitutional restriction to a variety of takings; for example, to situations of trespass from flooding waters escaping from artificial reservoirs, *Ashley v. City of Port Huron* (1877), 35 Mich 296; *Herro v. Chippewa County Road Commissioners* (1962), 368 Mich 263 [118 NW2d 271]; to a violation of building restrictions on private property by a city in undertaking to erect a fire station, *Allen v. City of Detroit* (1911), 167 Mich 464 [133 NW 317]; and to a city's abortive condemnation proceedings for urban renewal, ultimately abandoned after ten years, *In re Urban Renewal, Elmwood Park Project* (1965), 376 Mich 311 [136 NW2d 896].
"Courts of other states have applied similar provi-

sions in their state constitutions to factual situations corresponding to those of this case."

When the no-fault act became effective on October 1, 1973, plaintiffs' "contract of insurance" with the state was effectively terminated. The contract rights taken by the state are represented by the "premium" for the unexpired portion of the contract which was determined to be $22.50. That money was previously placed in the MVACF and used to recompense members of the public injured by uninsured motorists.

Having decided that plaintiffs had a property interest which was taken by the state, we must now determine whether there was just compensation for the taking.

In our previous decision in this case, we held, as a matter of state law, that plaintiffs had a right to a refund from the MVACF, but only after other claims against the fund were first satisfied. It now appears that the MVACF is inadequate to satisfy both groups of claimants, thereby leaving plaintiffs a right without a remedy.

In *Hays v Regents of the University of Michigan,* 53 Mich App 605, 611-612; 220 NW2d 91 (1974), this Court denied the plaintiffs a constitutionally compelled refund because the funds sought had already been budgeted and disbursed. The Supreme Court peremptorily reversed, indicating that prior disbursement was not a sufficient justification to deny a constitutionally compelled remedy. *Hays v Regents of the University of Michigan,* 393 Mich 756; 223 NW2d 276 (1974). See also, *Ward v Board of Commissioners of Love County,* 253 US 17; 40 S Ct 419; 64 L Ed 751 (1920).

We conclude that plaintiffs are entitled to a

refund without regard to the solvency of the MVACF. In light of this conclusion, it is unnecessary to address plaintiffs' other constitutional arguments.

Affirmed. No costs, a public question involved.